IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DARLA MARNEY, | ) | Civil No.: 3:15-cv-01759-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Bruce W. Brewer
P.O. Box 421
West Linn, OR 97068

      Attorney for Plaintiff

Billy J. Williams, Acting U.S. Attorney
Janice Hebert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Jordan D. Goddard
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

      Attorneys for Defendant

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. Pro. 25(d).

JELDERKS, Magistrate Judge:

Plaintiff, Darla Marney, brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). Plaintiff seeks an Order remanding the action to the Social Security Administration ("Agency") for an award of benefits or, in the alternative, remanding for further proceedings.

For the reasons set out below, the Commissioner's decision should be REVERSED and REMANDED for further proceedings.

## Procedural Background

Plaintiff protectively filed an application for DIB and SSI on August 15, 2011, alleging disability since January 1, 2010.

After her claims were denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing.

On February 6, 2014, a hearing was held before Administrative Law Judge ("ALJ") Rudolph Murgo. Plaintiff and Kent Granat, a Vocational Expert ("VE"), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated February 28, 2014, ALJ Murgo found Plaintiff was not disabled within the meaning of the Act.

On July 14, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1976 and was 37 years old at the time of the ALJ's decision. Tr. 215. She earned a high school equivalence degree ("GED") and completed training as a certified nursing assistant. Tr. 268. Plaintiff has never worked at substantial gainful activity levels. Tr. 65.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity ("SGA"). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Agency regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's

evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

At Steps One through Four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## ALJ's Decision

At the first step of his disability analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. Tr. 21.

At the second step, the ALJ found Plaintiff had the following severe impairments: obesity; dysfunction of major joints; panic disorder; major depressive disorder; and post-traumatic stress disorder ("PTSD"). *Id*.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1; Tr. 23.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC"). He found that Plaintiff retained the capacity to perform light work except Plaintiff could lift twenty pounds occasionally and ten pounds frequently. Tr. 25. He further found that Plaintiff:

> [C]an stand or walk for two out of eight hours and sit for six of eight hours . . . . she can no more than occasionally crawl, crouch, kneel or climb ropes, ladders or scaffolds. She can no more than frequently balance and climb ramps and stairs. She can stoop without limitations. She must avoid concentrated exposure to fumes and odors, dust, gases, pulmonary irritants, heights and heavy equipment. She is limited to simple, routine tasks consistent with the SVP 1 or 2 levels. She can read, write, add and subtract at the level of a person with a GED. She is limited to no more than occasional public contact in person and on the telephone.

*Id*.

In making his determination, the ALJ found not all of Plaintiff's symptom allegations were credible. Tr. 27.

At the fourth step, the ALJ found Plaintiff had no past relevant work. Tr. 32.

At the fifth step of the disability analysis, the ALJ found Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited circuit board assembler, dye attacher, and electronics worker as examples of such work. Tr. 33. Having concluded that Plaintiff could perform other work, the ALJ found

Plaintiff had not been under a disability within the meaning of the Act since January 1, 2010, the date her application was protectively filed. Tr. 34.

**<u>Standard of Review</u>**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

**<u>Discussion</u>**

Plaintiff contends the ALJ erred by: (1) failing to find fibromyalgia, irritable bowel syndrome (IBS), and migraine headaches to be severe impairments at Step Two, which tainted

the ALJ's findings in the remaining steps of the sequential analysis; (2) improperly finding Plaintiff's subjective symptom testimony less than fully credible; (3) improperly rejecting the opinion of examining psychologist, Dr. Keli Dean; and (4) finding Plaintiff was able to perform work at Step Five that was inconsistent with the RFC. Plaintiff seeks remand for an immediate award of benefits or, in the alternative, for further proceedings.

## I. Plaintiff's Impairments

As noted above, Plaintiff contends the ALJ erred by failing to find fibromyalgia, IBS, and migraines were severe impairments at Step Two. Plaintiff further argues the ALJ's error resulted in an RFC that failed to take into account all of the limitations stemming from these impairments, and undermined the ALJ's analysis in the remaining steps of the sequential framework.

An impairment or combination of impairments is considered "severe" at Step Two if it significantly limits a claimant's ability to perform basic work activities. SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996). An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to do such activities. *Id.* The "severe impairment" analysis is a "*de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

### A. Fibromyalgia

Plaintiff first argues the ALJ erroneously determined that her fibromyalgia was never diagnosed by an acceptable medical source. In support, Plaintiff points to a November 2011 treatment record where her rheumatologist, Dr. Suzanne DeLea, diagnosed "severe uncontrolled fibromyalgia syndrome," after noting Plaintiff had "18 [positive] tenderpoints." Tr. 1647. This treatment record was not before the ALJ when he rendered his decision; rather, Plaintiff

submitted the evidence for the first time when appealing the ALJ's decision to the Appeals Council. Tr. 4. Although the ALJ did not have the benefit of this treatment record when rendering his decision; when the Appeals Council "considers new evidence in deciding whether to review a decision . . . the evidence becomes part of the administrative record, which the district court must consider when reviewing the . . . final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Here, the Appeals Council considered Dr. DeLea's diagnosis and found it did not provide a basis for changing the ALJ's decision. Tr. 2. Accordingly, the Court must consider this new evidence in reviewing the ALJ's decision.

The Commissioner concedes that not including fibromyalgia as a severe impairment was error, but asserts that it was harmless error. According to the Commissioner, because the state agency physicians considered fibromyalgia in formulating their opinions, the ALJ implicitly considered fibromyalgia by adopting their opinions of Plaintiff's RFC. Tr. 31, 78, 82, 92, 96, 103, 111, 119, 128. In support, the Commissioner cites *Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005) ("[a]s long as a claimant's application is not denied at Step Two, any failure to identify a specific impairment as severe is harmless if the ALJ considered the functional effects of the claimant's impairments at the remaining steps of the sequential analysis."). Def.'s Br. at 13 (doc. 25).

The Commissioner's argument is unavailing. In giving great weight to the opinions of the State Agency physicians, it is far from clear that the ALJ actually accounted for any limitations stemming from Plaintiff's fibromyalgia. The RFC restricts Plaintiff to light work and includes a sitting and standing limitation, and while these limitations may have been intended to account for fibromyalgia, the record reflects that it is more likely the limitations were included to address

Plaintiff's major joint dysfunction or obesity. For example, Plaintiff testified that the majority of the pain she suffers is due to fibromyalgia, which requires she lay in a fully or partially reclined position for four to five hours in an eight-hour period. Tr. 54, 58-59. However, the RFC contained no limitations that took Plaintiff's recumbency needs into account, nor did the ALJ explain why there was no accommodation made, which indicates that Plaintiff's fibromyalgia complaints were disregarded.

The Commissioner suggests the Court look past the ALJ's express rejection of fibromyalgia as a medically determinable impairment in order to find that he, nevertheless, "fully accounted for fibromyalgia in the [RFC] finding" by giving great weight to unspecified portions of the State Agency physicians' reports. Def.'s Br. at 13-14 (doc. 25). I decline to make this analytical leap, especially given that the hearing transcript and the ALJ's decision demonstrate that the ALJ summarily dismissed considering fibromyalgia solely upon his belief that it was never validly diagnosed.[2] *See Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of a claim).

The Commissioner also argues that under the Agency's guidelines, evaluation of the severity of fibromyalgia is largely based on the claimant's subjective allegations, and the ALJ properly found Plaintiff's self-reports unreliable. *See* SSR 12-2p, 2012 WL 3017612, at *5 (July 25, 2012). As Plaintiff correctly notes, this argument puts the cart before the horse. The

---

[2] For example, while questioning Plaintiff about fibromyalgia during the hearing the ALJ stated, "I see you think you've been diagnosed with it, but I looked at all the reports, and I found most, if not all of them, said you had a history of fibromyalgia. I didn't find one diagnosing doctor saying you have it . . . . I've got a naturopath, who obviously can't diagnose." Tr. 54. Furthermore, The ALJ stated in the decision that "[w]hile the medical evidence record appears to include fibromyalgia among the claimant's impairments, it never appears to be diagnosed by a medically acceptable source. It generally appears to be simply repeated as a diagnosis." Tr. 23.

Agency's rules set out a two-step process for evaluating fibromyalgia. *Id.* Before a claimant's fibromyalgia symptom testimony is even considered under the second step, the ALJ must first find that a claimant's fibromyalgia is a medically determinable impairment, *i.e.*, supported by a diagnosis from an acceptable medical source. *Id.* at *3-5. Here, the ALJ found Plaintiff's fibromyalgia was not a medically determinable impairment, as demonstrated by: the ALJ finding fibromyalgia not severe at the Step Two *de minimus* screening; the ALJ's repeated notations that fibromyalgia was never validly diagnosed; and the ALJ's reference to Plaintiff's fibromyalgia as "alleged." Tr. 23, 27, 29, 54. Thus, the ALJ did not reject Plaintiff's fibromyalgia symptoms because he found her self-reports less than credible; rather, he dismissed fibromyalgia outright because he believed that it was never properly diagnosed in the first place. In doing so, the Commissioner's final decision ran afoul of the requirements of SSR 12-2p. Accordingly, the ALJ's determination was not based on the proper legal standards.

Furthermore, the ALJ's dismissal of fibromyalgia at Step Two likely prejudiced the Step Three analysis. At Step Three, the ALJ made no mention of fibromyalgia in determining whether it considered alone, or in combination with Plaintiff's other impairments, medically equaled a listing. Tr. 23-25; *see also* SSR 12-2p, at *5. The ALJ was required to consider all of Plaintiff's impairments, "both severe and non-severe, and why they did not meet or equal any of those on the Listing of Impairments." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011). The ALJ's failure to consider all of Plaintiff's impairments coupled with the Appeals Council's denial of review constitutes reversible error.

**B. Irritable Bowel Syndrome**

Plaintiff next argues the ALJ erred by failing to articulate a reason for finding Plaintiff's IBS non-severe at Step Two and failing to incorporate any related limitations into the RFC.

Plaintiff asserts that the medical record is replete with evidence of IBS. *See, e.g.*, Tr. 425-427, 433, 875, 938, 945, 1038, 1235, 1282, 1338-39, 1351-52, 1357, 1437. Plaintiff also testified at the hearing about her sudden need for frequent restroom breaks. Tr. 62-63. In finding IBS not severe at Step Two, after a brief analysis, the ALJ noted that Plaintiff "has a long history of . . . irritable bowel syndrome, with some notations of stable bowel function." Tr. 22 (citations omitted). The June 2010 treatment record cited by the ALJ notes that Plaintiff's "bowel function is reported to be stable at this time." Tr. 1278. Additionally, in formulating the RFC, the ALJ noted that Plaintiff reported in August 2012 that her digestive symptoms were improving after addressing her diet. Tr. 28, 1486.

After careful review of the record, the Court finds that the ALJ's reasoning is not supported by substantial evidence. In finding Plaintiff's IBS non-severe, the ALJ "selectively relied" on an isolated example of improvement and "ignored the many others that indicated continued, severe impairment." *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). Furthermore, the ALJ provided no explanation for why Plaintiff's IBS "has no more than a minimal effect on the ability to do basic work activities." *See* SSR 96-3p, at *1.

In response, the Commissioner argues that determining the severity of IBS is largely dependent on Plaintiff's self-reports, which the ALJ found less than credible. The ALJ, however, never stated that he found Plaintiff's reports of IBS symptomology not credible. In fact, the only discussion in the decision that could arguably be interpreted as forming the basis for the ALJ's dismissal of IBS was based on two treatment records where Plaintiff reported improvements in her bowel functioning and digestive symptoms. Tr. 22, 28, 1278, 1486. The Commissioner's argument is both illogical and post hoc. Illogical in asserting that the ALJ found Plaintiff's self-reports of IBS implausible, save the two occasions she reported some improved symptoms. Post

hoc in invoking grounds not relied upon by the ALJ in his determination. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

Although Plaintiff's claim proceeded past Step Two, the ALJ finding IBS non-severe was not harmless error because it likely prejudiced the subsequent steps of the sequential analysis. *See Burch*, 400 F.3d at 682 (observing that failure to find an impairment "severe" at Step Two can result in prejudice at subsequent steps not decided in the claimant's favor). Similar to Plaintiff's fibromyalgia impairment, the ALJ made no mention of IBS in determining whether Plaintiff's impairments met or equaled a listing at Step Three. Tr. 23-25. Moreover, the RFC included no limitations for Plaintiff's need for frequent restroom breaks, nor any discussion as to why limitations were not warranted. Tr. 25-31.

## C. Migraines

Plaintiff argues the ALJ's reasoning for finding Plaintiff's long history of migraines non-severe at Step Two was erroneous. Plaintiff also argues the ALJ's error prejudiced the RFC formulation—undermining the ALJ's Step Five finding. Plaintiff has a long history of migraines. *See, e.g.*, Tr. 363, 369, 534, 863, 1100, 1517. The ALJ, however, found Plaintiff's migraines non-severe based on the findings of a neurological consultation conducted by Dr. Robert Egan in July 2013. Tr. 22, 1520. In that report, Dr. Egan reviewed Plaintiff's recent brain CT-scan and opined that Plaintiff's problem was "benign." Tr. 1520.

Plaintiff notes that a CT-scan is not capable of diagnosing migraines; instead, it is used by medical providers to rule out other causes that could be causing a patient's headaches, such as

a brain tumor. Pl.'s Opening Br. at 9 (doc. 21).[3] By noting Plaintiff's problem was benign, Dr.

Egan was explaining that the CT-scan did not reveal any abnormalities in Plaintiff's brain.

Clearly, Dr. Egan was not stating Plaintiff did not suffer from migraines, as evidenced by the

very next sentence in the report stating, "I told her that I thought this was more likely migrainous

in origin." Tr. 1520. Accordingly, the ALJ's factually erroneous reason for finding Plaintiff's

migraines non-severe was not supported by substantial evidence. *See Andrews*, 53 F.3d at 1039.

    Moreover, the ALJ's treatment of Plaintiff's migraines likely prejudiced the subsequent

steps of the sequential analysis. Notably, the ALJ made no mention of migraines in the Step

Three listing determination, nor did he include any migraine limitations in the RFC or provide an

explanation for why limitations were not warranted. This was harmful error. *See Burch*, 400 F.3d

at 682.

## II. Plaintiff's Credibility

    Plaintiff contends the ALJ erred in finding Plaintiff's symptom testimony was less than

credible. Specifically, Plaintiff argues the ALJ: (1) mischaracterized Plaintiff's activities of daily

living (ADLs); (2) improperly found Plaintiff's poor work history and the reasons surrounding

her most recent job loss undermined her allegations of disability; (3) erroneously found

Plaintiff's testimony was undercut by the conservative treatment she received, and failed to

specify why the positive results Plaintiff experienced after undergoing bi-lateral knee surgeries

---

[3] In support, Plaintiff cites: WebMD, Can an MRI Help Diagnose Migraines and Headaches? (Jan. 17, 2017), http://www.webmd.com/migraines-headaches/making-diagnosis-mri. That article discusses the use of an MRI. Plaintiff underwent a CT-scan, not an MRI. Tr. 1520. Despite this factual mistake, the merit of Plaintiff's argument remains unchanged. Similar to an MRI, a CT-scan is unable to diagnose migraines and is used instead to rule out brain abnormalities that could be causing migraine symptoms. *See Dalley v. Commissioner of Social Security*, 2006 WL 2578269 at * 7 (N.D. Cal. 2006) ("[M]igraine headaches are a common malady that are readily diagnosed through the evaluation of symptoms . . . . No diagnostic tests are useful, except to exclude other causes.").

was contrary to her testimony; (4) made an unsupported determination that Plaintiff's ability to sit through the hearing negated testimony about her need to recline; (5) failed to specify how Plaintiff's allegations of difficulty dealing with the public was undermined by taking public transit to the hearing; and (6) erred by discounting Plaintiff's symptom testimony based on her failure to seek mental health counseling until nearly four years after the alleged onset date.

**A. Standards**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Pursuant to SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective and there is an absence of binding precedent interpreting this new ruling or addressing whether it applies retroactively. *Compare Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Lockwood v. Colvin*, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy. SSR 16–3p, at *1; *also compare* SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). In *Andre v.*

*Colvin*, 6:14-cv-02009-JE (D. Or. Oct. 13, 2016), I recently concluded that, for this reason, retroactive application of the new SSR is appropriate.

The new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR 16–3p, at *10. In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16–3p, at *10. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." SSR 16–3p, at *10. Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" SSR 16–3p, at *9. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, at *9.

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

**B. Activities of Daily Living**

Plaintiff first argues the ALJ mischaracterized her ADLs, and failed to take into account that the activities that she is able to perform are typically sporadic and punctuated by periods of rest. Tr. 27. The ALJ found Plaintiff's symptom testimony only partially credible based in part on Plaintiff's "fairly robust [ADLs]." Tr. 32. An ALJ may discount a claimant's testimony if it is inconsistent with the claimant's ADLs, or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

Plaintiff's testimony is not contradicted by her ADLs. In discrediting Plaintiff's symptom testimony, the ALJ noted that Plaintiff performs the following activities: she cares for her two children, ages eight and thirteen; attends church infrequently; manages self-care independently; cooks for the family; cares for a dog; shops for groceries; uses public transportation; and she does household chores with help from her children, friends, and family. Tr. 26, 31-32. In context, however, the ALJ's findings do not demonstrate a greater functional ability than Plaintiff alleged. For example, Plaintiff testified that her ability to care for her children suffers due to her impairments and at times she feels her thirteen-year-old daughter is parenting her younger sibling. Tr. 61. When she does cook meals they are often quick, simple meals, and her "daughter picks up the slack and will cook for her and her brother" when Plaintiff is in too much pain to prepare a meal. Tr. 54; *see also* Tr. 61, 284, 318-19.

On a typical day, Plaintiff ensures her children wake up in the morning with enough time to get ready for school, usually around 7:00 a.m. Tr. 52. Her son catches a ride with a neighbor and her daughter walks to the bus stop. *Id.* After she sees her children off, Plaintiff returns to bed and sleeps until 10:00 or 11:00 a.m. *Id.* She spends four to five hours out of an eight hour timeframe lying in her bed or in a recliner due to her pain, fatigue, and depression. Tr. 59. While waiting for her children to return from school, Plaintiff spends some of her waking hours watching television and corresponding with friends on her cell phone. Tr. 53. Ultimately, she spends 90 to 95 percent of her time in her home. Tr. 63. In terms of personal care, Plaintiff testified that she considers herself lucky if she can shower once a week. Tr. 51, 319.

In regards to grocery shopping, Plaintiff goes once every two to three weeks. Tr. 62. She often sends her daughter to a Walgreens across the street from their home to pick up items needed in between grocery trips. *Id.* When she does go shopping, Plaintiff requires a ride from her mother, limits her time at the store, and needs the assistance of a motorized cart or leans on a push-cart for support. *Id.* When taking public transportation, Plaintiff explained that she prepares by leaving extra early to account for any emergency restroom breaks she might need and she goes without eating to reduce the chance of needing to visit a restroom. Tr. 63. Finally, as to household chores, Plaintiff indicated that she requires the assistance of her children with the dishes and laundry; and, even then, the chores are "never totally done." Tr. 320; *see also* Tr. 52, 279. Furthermore, she relies on her children, family, and friends to help with the vacuuming and general cleaning of her home. Tr. 52, 279, 320. As such, although Plaintiff can perform some activities around the home, the tasks are not demanding, she requires frequent breaks, and she often needs assistance.

Despite the ALJ's assertion to the contrary, Plaintiff's minimal level of activity is far from "robust." Furthermore, her ADLs are not at odds with her symptom testimony. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Although the ALJ failed to make any findings relating to how Plaintiff's ADLs transfer to workplace skills, given the nature in which Plaintiff carries out her minimal daily activities, the Court finds that Plaintiff's ADLs do not meet the threshold for transferrable work skills. *Orn*, 495 F.3d at 639 ("The ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.") (internal citation omitted). Accordingly, Plaintiff's ADLs do not constitute a specific, clear, and convincing reason for discrediting her physical impairment testimony.

**C. Work History**

Plaintiff argues the ALJ acted in contravention of SSR 16-3p by making a wholesale adverse credibility determination based on Plaintiff's poor work history and the non-medical reason she left her last job. An ALJ may properly consider a claimant's poor work history in his evaluation of the claimant's symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002); 20 C.F.R. § 404.1529 (work record can be considered in assessing credibility); 20 C.F.R. § 416.929 (same). Furthermore, an ALJ may take into account the reasons a claimant exited the workforce when evaluating symptom testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Here, the ALJ noted that Plaintiff never earned at substantial gainful activity levels during the "fifteen years prior to [her] alleged year of onset," and "[i]n one year, she had absolutely no earnings." Tr. 32. The ALJ found Plaintiff's sporadic work history "raises questions as to whether [her] continuing unemployment is actually due to her medical impairments." *Id*. Furthermore, the ALJ noted that Plaintiff exited the workforce in May 2007— more than two years before the alleged onset date—for reasons unrelated to her medical impairments. *Id*. In making these findings, the ALJ was not assessing whether Plaintiff is a truthful person; rather, he was calling into question whether Plaintiff's unemployment was more likely due to a lack in motivation to work instead of disability. As such, the ALJ provided a specific, clear, and convincing reason, supported by substantial evidence, for discrediting Plaintiff.

**D. Conservative Treatment and Symptom Improvement**

Plaintiff contends the ALJ erred in using the "good results and conservative treatment" she received following her knee surgeries as a reason for undermining her credibility. Tr. 27. Plaintiff asserts the ALJ failed to specify which complaint was undermined by the conservative treatment and positive surgery results. Furthermore, Plaintiff argues the ALJ's reliance on conservative treatment cannot form the basis for discrediting her symptom testimony relating to her fibromyalgia because the ALJ improperly rejected fibromyalgia from his consideration early in the sequential evaluation. "Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal citation omitted).

The degree to which the ALJ found the evidence of Plaintiff's conservative physical treatment diminished the reliability of her testimony is unclear. In one part of the decision the

ALJ stated, "[d]espite consistently [sic] complaints of bilateral knee pain . . . the claimant's pain symptoms improved after bilateral patellar realignment procedures. Thereafter, only conservative treatment was recommended by her surgeon." Tr. 27. Later in the decision, however, the ALJ stated, "the medical record does not support the severity of the claimant's physical . . . impairments. The claimant's knee pain appears to have improved after surgery and thereafter only conservative treatment was recommended." Tr. 32. I find the ALJ's determination valid to the extent he found Plaintiff's testimony concerning the severity of her knee pain undermined by post-operative symptom improvement and a conservative course of treatment. However, any use of that evidence to discredit Plaintiff's testimony concerning the severity of her other physical impairments, including fibromyalgia, was improper. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints") (citation omitted). However, given that the ALJ rejected Plaintiff's fibromyalgia on belief that it was never validly diagnosed, on remand, the ALJ must reevaluate the severity of Plaintiff's fibromyalgia by properly taking her symptoms into account, as detailed in SSR 12-2p.

**E. Plaintiff's Need to Recline**

Plaintiff next argues the ALJ erroneously undermined her testimony concerning her need to recline each day. The ALJ stated that "[d]espite the claimant's statements regarding the need to recline, she sat during the entre [sic] hearing without issue." Tr. 27. An "ALJ's reliance on his personal observations of [a claimant] at the hearing has been condemned as 'sit and squirm' jurisprudence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). The practice is generally disfavored, and may not form the sole basis for discrediting a claimant's testimony. *Orn*, F.3d at 639. Under Ninth Circuit precedent, sit and squirm observations appear

to be valid when the claimant manifests symptoms inconsistent with the medical evidence or her testimony, but not valid when a claimant fails to exhibit symptoms of alleged pain. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Nonetheless, the "inclusion of the ALJ's personal observations does not render the decision improper." *Id*. Interestingly, SSR 96-7p indicated that the ALJ could consider his own observations "in the overall evaluation of the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *8 (July 2, 1996). However, SSR 16-3p does not include such language.

Here, the ALJ disregarded Plaintiff's testimony regarding her need to recline for "four to five hours" out of an eight hour period. Tr. 59. The ALJ made this finding based on his observation of Plaintiff during a 45 minute period. *See* Tr. 43-71 (timestamps documenting that the hearing began at 1:05 p.m. and ended at 1:50 p.m.) This finding was not supported by substantial evidence, and was not a sufficiently clear and convincing reason for discrediting Plaintiff's need to recline. The ALJ's limited observation of Plaintiff is not inconsistent with her testimony. The fact that Plaintiff was able to sit in an un-reclined position for a mere 45 minutes leaves plenty of time remaining in the day for her to meet her recumbency needs. Moreover, Plaintiff stated "I'm already uncomfortable, and my back is already hurting," shortly after the ALJ began his questioning at the hearing. Tr. 50. Finally, the ALJ improperly took into account Plaintiff's failure to exhibit symptoms of her alleged pain. *See Verduzco*, 188 F.3d at 1090. Accordingly, the ALJ's reason for dismissing Plaintiff's need to recline was unsupported by the record.

**F. Social Functioning**

Plaintiff asserts the ALJ failed to specify why her limitations in dealing with the public were negated by the fact that she rode the bus to get to the hearing. The ability to take public

transportation "relates to a claimant's social functioning." *Attmore v. Colvin*, 827 F.3d 872, 878 n.2 (9th Cir. 2016). The ALJ noted that Plaintiff "was able to take the bus to the hearing on a snowy winter's day, which suggests some ability to manage public contact." Tr. 27. Despite this finding, the ALJ gave Plaintiff "the benefit of the doubt" as to her complaints of difficulties with interacting with others, and found her mental impairments warranted "some functional limitations." Tr. 31. In so doing, the ALJ limited Plaintiff's RFC to "no more than occasional public contact in person and on the telephone." Tr. 25. The ALJ's decision in this regard was supported by substantial evidence.

## G. Psychological Impairments

Plaintiff argues the ALJ erred in finding her symptom testimony relating to her psychological impairments was undermined by her failure to seek counseling until October 2013, nearly four years after the alleged onset date. Specifically, Plaintiff asserts the record is silent as to why treatment commenced then and the ALJ erred by failing to inquire. Additionally, Plaintiff contends that the ALJ failed to identify which psychological complaint was undermined by a delay in treatment. In making this argument, Plaintiff mischaracterizes the ALJ's treatment of her psychological symptom testimony. The ALJ provided more reasons than just her delay in seeking counseling for why he did not fully credit the alleged severity of Plaintiff's mental health impairments.

First, the ALJ correctly noted that Plaintiff only received conservative treatment for her psychiatric impairments. Tr. 32. Plaintiff began endorsing symptoms of depression on and off since 1998, and symptoms of anxiety since 2004. Tr. 1386. Her medical providers recommended only routine, conservative treatment with anti-depressant and anti-anxiety medications. Tr. 1434,

1454, 1456. Conservative treatment is "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra*, 481 F.3d at 751.

Second, Plaintiff never sought nor received any mental health treatment until October 2013, because by the time she received insurance authorization she generally felt better and did not pursue treatment. Tr. 1386. "[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment." *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)) (internal quotation marks omitted). Thus, the ALJ properly took Plaintiff's failure to pursue mental health treatment into account. This reason standing alone was sufficient for discrediting Plaintiff's psychological symptom testimony. Furthermore, the fact that Plaintiff never followed through with seeking treatment because her symptoms would eventually subside further undermines the alleged severity of her psychological impairments.

Finally, the ALJ correctly noted that the record contained evidence that Plaintiff's mental health symptoms improved with treatment. Tr. 32. For example, Plaintiff reported improved symptoms on numerous occasions after she was prescribed anti-depressants. *See, e.g.*, Tr. 1424 ("[P]atient indicates they have pleasure and interest in doing things . . . not feeling down, depressed or hopeless"); Tr. 1604 ("Mood stable . . . Denies depression, anxiety"); Tr. 1611 ("[N]o depression, anxiety, or agitation"); Tr. 1578 (Plaintiff "in mild distress . . . [due] to finalizing her divorce . . . abruptly [discontinued] Rx Cymbalta, which was effective for her"). In assessing a claimant's credibility, an ALJ may consider the "effectiveness . . . of any medication an individual takes or has taken to alleviate . . . symptoms." SSR 16–3p, at *7. Here, the ALJ did just that. For these reasons, the ALJ did not err in his treatment of Plaintiff's symptom testimony relating to her psychological impairments.

In conclusion, the ALJ's credibility determination was proper in regards to Plaintiff's allegations of psychological impairments, social functioning, and knee pain. The ALJ, however, erred in his discussion of Plaintiff's ADLs and need to recline in discrediting the severity of her physical impairments. On remand, the ALJ must reevaluate Plaintiff's symptom testimony as discussed in Part V, *infra*. Accordingly, the Court upholds some of the ALJ's credibility findings, but finds the ALJ did not provide legally sufficient reasons to support others. SSR 16-3p.

### III. Medical Testimony

Plaintiff argues the ALJ erred in rejecting the opinion of examining psychologist Dr. Keli Dean, who indicated Plaintiff was disabled. Specifically, Plaintiff contends the ALJ offered only illegitimate reasons for rejecting Dr. Dean's opinion by finding her opinion was inconsistent with Plaintiff's conservative mental health treatment, was undermined by evidence that Plaintiff's conditions responded positively to treatment, and was unreliable to the extent it was based on Plaintiff's self-reports.

### A. Standards

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti*, 533 F.3d at 1041. In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining

physician, *id.*, and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. *Andrews*, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830–31.

**B. Dr. Dean's Opinion**

A claimant's allegation of severe mental impairment requires application of the analysis provided in a "special technique." 20 C.F.R. §§ 404.1520(a), 416.920a(a). Pursuant to the special technique, relevant symptoms, signs, and medical findings are first evaluated to determine whether the claimant has any medically determinable mental impairments. 20 C.F.R §§ 404.1520a(b)(l), 416.920a(b)(l). If such impairments are shown, the ALJ specifies the evidence establishing the existence of the impairments and evaluates the claimant's degree of functional limitation. 20 C.F.R. 404.1520a(b)(l), 416.920 a(b)(l).

The ALJ's RFC assessment is separate and distinct from the special technique analysis. *See* 20 C.F.R. §§ 404.1520a(b)(l), 404.1546(c), 416.920a(b)(l), 416.946(c); SSR 96–8p, 1996 WL 374184, at *3 (July 2, 1996). As the ALJ noted in his decision, the limitations identified at Step Three "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Tr. 25. *See, e.g., Dodds v. Astrue*, No. CIV. 09-332-AC, 2010 WL 5662968, at *3 (D. Or. Dec. 28, 2010), *report and recommendation adopted*, No. CIV. 09-332-AC, 2011 WL 304993 (D. Or. Jan. 25, 2011) ("B" criteria used to determine whether impairment is severe enough to require RFC assessment, not to determine claimant's RFC).

In January 2014, at the request of the Department of Human Services, Dr. Dean administered a series of psychological, cognitive, and personality assessments of Plaintiff. Tr. 1622-39. She diagnosed Plaintiff with major depressive disorder, recurrent, moderate; and PTSD. Tr. 1633. Dr. Dean also gave Plaintiff a provisional diagnosis of panic disorder with agoraphobia and a rule-out somatic symptom disorder. *Id*. She opined that Plaintiff had four or more episodes of decompensation within a 12 month period, and had marked limitations in the ability to perform activities within a schedule, and the ability to complete a normal workday and workweek without interruptions for psychologically based symptoms. Tr. 1637-39. Dr. Dean also found Plaintiff had moderate limitations in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; accept instructions and respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make independent plans. Tr. 1638-39.

The ALJ gave "some weight" to Dr. Dean's opinion, but gave no weight to her findings regarding marked limitations and episodes of decompensation. Tr. 30. The ALJ found Dr. Dean's finding of decompensation was contradicted by the medical record, which contained no evidence that Plaintiff underwent psychiatric hospitalization at any time or other evidence of decompensation of an extended duration. *Id*.

The ALJ also found Dr. Dean's assessment of marked limitations was inconsistent with Plaintiff's "minimal, routine and conservative mental health treatments and indications that [her] condition has improved with treatment." *Id*. In so finding, the ALJ was noting that Dr. Dean's opinions were contradicted by Plaintiff's treating sources and treatment records, indicating Plaintiff's psychological impairments were controlled well with prescription medication and counseling, as discussed above. This was a sufficiently specific and legitimate reason for

rejecting Dr. Dean's opinion that Plaintiff had marked limitations. *See Tommasetti,* 533 F.3d at 1041 (finding it proper for an ALJ to reject a physician's opinion that is inconsistent with the treatment record).

The ALJ also discredited Dr. Dean's opinion "to the extent that [the] assessment was based on [Plaintiff's] self-report," because "objective testing showed some possible evidence of overrepresentation of symptoms." Tr. 30. Dr. Dean found that some of Plaintiff's responses on the Personality Assessment Inventory (PAI) fell "outside of the normal range," indicating that she "may not have answered in a completely forthright manner . . . as well as an exaggeration of certain problems." Tr. 1630. Dr. Dean cautioned that "the nature of her responses might lead the evaluator to form a somewhat inaccurate impression;" and, "[a]lthough this pattern does not necessarily indicate a level of distortion that would render the test results uninterpretable, the interpretive hypotheses presented in this report should be viewed with this response style in mind." *Id.*

Without citing any supportive authority, Plaintiff argues "the ALJ failed to offer a basis for his determination that possible symptom magnification invalidated Dr. Dean's opinion when, in fact, Dr. Dean rendered her opinion in express contemplation of the possible over-reporting." Pl.'s Reply Br. at 12 (doc. 32). The Commissioner responds by noting that an ALJ "may discount opinions from examining psychologists to the degree they rely on a claimant's unreliable self-report." Def.'s Br. at 12 (doc. 25) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010)). I agree with the Commissioner. As discussed, Dr. Dean's opinion expressly notes that Plaintiff's "exaggeration of certain problems . . . are likely to overrepresent the extent and degree of symptoms in particular areas," and the report "should be reviewed with this response style in mind." Tr. 1630. Essentially, Dr. Dean invites the reader to question the

accuracy of her own opinion due to Plaintiff's less than forthright responses to the PAI. The ALJ did just that. Consequently, the ALJ did not err.

## IV. Step Five

Plaintiff argues the ALJ's Step Five determination, finding Plaintiff could perform other jobs that existed in significant numbers in the national economy, was unsupported by substantial evidence. Specifically, Plaintiff contends that the light level jobs the ALJ identified, with the assistance of the VE, were inconsistent with the RFC's sitting and standing limitation.[4] An ALJ may rely on the testimony of a VE to determine whether a claimant retains the ability to perform past relevant work at Step Four, or other work in the national or regional economy at Step Five. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations which are supported by substantial evidence in any hypotheticals posed to a vocational expert. *See id.* at 1163-65. "Conversely, an ALJ is not free to disregard properly supported limitations," including improperly discredited symptom testimony provided by the claimant or a lay witness. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). In either case, if the assumptions presented in the hypothetical are not supported by substantial evidence in the record, "the vocational expert's opinion has no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 518 (9th Cir. 2001).

Among other limitations included in the RFC, the ALJ found Plaintiff could lift ten pounds frequently, and could stand or walk for only two hours in an eight-hour period. Tr. 25.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

These limitations were included in the hypothetical presented to the VE. Tr. 65-66. In response, the VE identified several light level jobs existing in the national economy that the hypothetical individual could perform. Tr. 66-68. Based on the jobs identified, the ALJ found Plaintiff not disabled at Step Five. Tr. 33.

Plaintiff notes the Agency's rules explain that "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983). Thus, argues Plaintiff, the ALJ's reliance on light level jobs requiring frequent lifting and standing for six of eight hours in a workday was inconsistent with the ALJ's finding that Plaintiff can only stand for two hours a day. The Commissioner argues there is no conflict between Plaintiff's limitations and the jobs identified because light work can involve either a good deal of standing, or sitting most of the time with some pushing and pulling of arm controls. 20 C.F.R. § 404.1567(b). And, "[for] a difference between an expert's testimony and the *Dictionary*[ *of Occupational Titles*]*'s* listings to be characterized as a conflict, it must be obvious or apparent;" whereas, here, there was no apparent conflict. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). I disagree.

The Commissioner's reliance on *Gutierrez* is misplaced. That case discussed whether an ALJ was required to ask the VE more specific questions to determine whether the job of cashier was consistent with the plaintiff's inability to reach overhead. *Id*. at 807. In finding the ALJ was not required to inquire further, the Ninth Circuit took a common sense approach by noting that "anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." *Id*. at 808. Here, the jobs of circuit board assembler, dye attacher, and electronics worker are far more amorphous, and do not

involve the same degree of common understanding of duties that a cashier performs. While the Ninth Circuit was comfortable finding it neither apparent nor obvious that a store cashier might have to reach overhead, I cannot say the same as to whether the jobs the ALJ relied upon to find Plaintiff not disabled do, or do not, in fact, require the ability to stand for more than two hours a day. *See, e.g.*, *Dictionary, 726.687-010 (Electronics Worker)*, 1991 WL 679633 (duties of an electronics worker and circuit board assembler includes "moving parts and finished components to designated areas of [a] plant, such as assembly, shipping and receiving, or storage"). Accordingly, *Gutierrez* is inapposite.

Furthermore, as discussed, the ALJ's failure to include any limitations for Plaintiff's fibromyalgia, migraines, and IBS, or provide a legitimate basis for why limitations were not warranted, makes the RFC and the hypothetical question unsupported by substantial evidence. Moreover, the ALJ's failure to properly consider Plaintiff's symptom testimony in regards to her ADLs and need to recline further undermines the RFC and Step Five findings. Accordingly, "the vocational expert's opinion has no evidentiary value," and the ALJ's finding of non-disability fails. *Lewis*, 236 F.3d at 518.

**V. Remand**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted the court follows the "three-part credit-as-true standard." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under this

standard the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further administrative proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id*. If a court concludes that a Plaintiff meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–1021 (citations omitted).

Here, the ALJ's failure to find fibromyalgia, IBS, and migraines severe at Step Two, and either include limitations supported by the record or provide a sufficient basis for not including limitations requires that this action be remanded for further proceedings. Remand for an immediate award of benefits is not appropriate because it is unclear whether these impairments meet or equal a listing, and the degree to which Plaintiff is restricted by her physical impairments is also ambiguous. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."). Remand is further supported by the failure of the ALJ to properly consider Plaintiff's symptom testimony relating to her physical impairments, namely her need to recline. On remand, the ALJ should be required to either credit Plaintiff's symptom testimony or provide legally sufficient reasons for its rejection. Furthermore, if the ALJ's analysis advances to Step Five, regardless of whether the ALJ includes additional limitations in Plaintiff's RFC or not; he should retake the testimony of a VE and ensure any jobs identified are consistent with the RFC.

## Conclusion

For the reasons set forth above, the Commissioner's decision should be REVERSED and this action should be REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further administrative proceedings consistent with this Findings and Recommendation.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 26, 2017. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this _12th_ day of September, 2017.


_/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge